# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| KAM DEVELOPMENT, LLC<br>10440 Park Road, Suite 300<br>Charlotte, North Carolina 28210 | ) Case No. _____<br>)<br>) Judge_____<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT**<br>) |
| MARCO'S FRANCHISING, LLC<br>5252 Monroe Street<br>Toledo, Ohio 43623 | )<br>)<br>) |
| Defendant. | )<br>) |

\* \* \*

Plaintiff KAM DEVELOPMENT, LLC ("KAM"), by and through its attorneys, for its Complaint for against Defendant MARCO'S FRANCHISING, LLC ("Marco's" or "Defendant") hereby states as follows:

## INTRODUCTION

1. Defendant, Marco's, a national franchisor of pizza delivery and take-out restaurants, has breached its agreement with KAM by refusing to renew the agreement as dictated by its terms, despite KAM being in full compliance.

2. Over the last decade, KAM has dedicated significant time and millions of its own dollars developing franchises for the Marco's system pursuant an Area Representative Agreement ("Area Representative Agreement").

3. With less than thirty (30) days prior to the expiration of the Area Representative Agreement, and despite explicit assurances that a renewal agreement was forthcoming, and significant efforts by KAM towards renewal, Defendant manufactured defaults out of whole cloth and sent KAM a "Notice of Default," in a thinly veiled effort to wrongfully take KAM's business and capture the significant revenue stream for their own benefit.

4.      In fact, Defendant's CEO, Jack Butorac, sent a letter to the Area Representatives stating that he believes the Area Representatives have cost him over $230 million in lost revenue. While he claimed there was no plan to eliminate Area Representatives at that time, Defendant has since undertaken steps to slow down at store-level growth, and make it more difficult for Area Representatives to meet their development schedules, which would allow Marco's to default and terminate the Area Representatives and recapture the revenue stream, and then ramp up franchise sales once again.

5.      Marco's desire to recapture Area Representative royalty stream is a contributing motivation in Marco's fabricating the alleged defaults of KAM.

6.      Strikingly, KAM has responded to the Notice of Default setting forth in exacting detail the factual and legal reasons why the Notice of Default is completely without merit and demanded its immediate withdraw. KAM further requested that Defendant immediately send the renewal contract for the Agreement, engage in meaningful discussions towards a fair and reasonable resolution and agree to maintain the status quo, regardless of deadlines, until the issues were fully resolved. KAM also invoked the mediation provision in the agreement in an attempt to resolve the dispute.

7.      Now, with mere hours remaining before the Area Representative Agreement expires, Defendant has provided no substantive response, refused to agree to maintain the status quo to mediate the dispute, is in indisputable breach of the agreement's express terms by refusing to renew the agreement, and refuses to engage in the contractually-required mediation.

8.      Upon information and belief, Defendant's actions are motivated by an improper purpose which will not only cripple KAM's business but which will result in a windfall to Marco's.

9.     As detailed herein, Defendant's conduct runs directly afoul of Defendant's disclosures in its federally mandated Franchise Disclosure Document[1] and the express terms of the franchise agreement entered into by KAM and Defendant.

10.     Defendant's actions are motivated by its publicly stated desire to recapture the revenue stream from its Area Representatives, as well as, upon information and belief, a vendetta against former executives of Defendant.

11.     KAM brings this action for declaratory relief to preserve and protect its rights under the agreement and recover the damages caused by Defendant's unlawful conduct.

## PARTIES

12.     Plaintiff KAM is a limited liability corporation formed, organized and existing under the laws of the state of South Carolina and having a principal place of business at 10440 Park Rd, Ste 300, Charlotte, North Carolina 28210.

13.     Defendant Marco's is a limited liability company formed, organized and existing under the laws of the State of Ohio and having a principal place of business at 5252 Monroe Street, Toledo, Ohio 43623.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action under diversity of citizenship jurisdiction, 28 U.S.C. § 1332, as Plaintiff KAM is a South Carolina limited liability company and whose principal place of business is in the State of North Carolina and Defendant is an Ohio limited liability company and whose principal place of business is in the State of Ohio.

15.     KAM has satisfied the amount in controversy requirement as the value of the requested declaratory relief exceeds the jurisdictional threshold of $75,000.

---

[1] The Federal Trade Commission governs the offer and sale of franchises in accordance with 16 C.F.R. § 436, which requires franchisors to provide pre-sale disclosures to a prospective franchisee to consider in connection with making an investment decision.

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

17.     Venue is proper in this jurisdiction as Defendant is located within this District and events giving rise to the complained of conduct herein occurred within this District.

## BACKGROUND FACTS

### FTC REGULATIONS AND URBAN AIR'S
### FRANCHISE DISCLOSURE DOCUMENT

18.     The FTC has promulgated certain laws requiring the delivery to prospective franchisees of a prescribed disclosure document, known as a Franchise Disclosure Document ("FDD"), concerning the franchisor, its management, and the material terms and conditions of the franchise agreement, among other things, prior to the execution of any agreement by a prospective franchisee. Prior to July 1, 2007, this was known as the Franchise Rule, and the Amended Franchise Rule became effective as of July 1, 2007. The FDD is a disclosure format accepted by the FTC for conveying such information to prospective franchisees.

19.     The Amended Franchise Rule requires a franchisor to provide prospective franchisees with FDD disclosures that "present all material facts accurately, clearly, concisely and legibly in plain English." 16 C.F.R. § 436.1(d).

20.     "It is an unfair and deceptive act or practice" for any franchisor to violate a provision of the Amended Franchise Rule. 16 C.F.R. § 436.2.

### KAM AND DEFENDANT ENTER INTO
### AN AREA REPRESENTATIVE AGREEMENT

21.     In a franchise system, an Area Representative is responsible for the solicitation of potential franchisees and the servicing of existing franchisees within a defined geographic territory.

22.     In return, the Area Representative receives a commission for each initial fee paid to the franchisor as a result of the efforts of the Area Representatives, as well as the royalties paid to the franchisor by those franchisees.

23.     Upon signing an area representative agreement, and upon the renewal thereof, the Area Representative pays a substantial initial fee to the franchisor.

24.     The principals of KAM are Mike Hunter and Andy Hunter.

25.     In 2010, Defendant approached Mike Hunter about becoming an "Area Representative" for Defendant's franchise system.

26.     At that time, Defendant was aware that Mike Hunter was a franchisee in the Subway franchise system.

27.     Upon information and belief, Defendant was aware that the Hunters had additional business interests.

28.     Defendant enticed the Hunters to enter into the area representative agreement by stating that, with the renewal terms guaranteed in the agreement, the relationship would last for thirty (30) years and create "generational wealth."

29.     Defendant provided the Hunters with its 2010 FDD.

30.     Item 15 of Defendant's 2010 FDD, the version provided to the Hunters, states that the "Area Representative Agreement does not require you (or the majority owner of your Area Representative Business) to become a Highly Trained Personnel or otherwise participate personally in the direct operation of the Representative Business[,]" and that the Area Representative may "hire sufficient employees to perform the Sales and Franchise Support functions" and that the "Area Representative or the Operating Partner shall devote full time, energy and best efforts to the management of the Representative Business."

31.    Relying upon the enticement of "generational wealth" and the disclosures contained in Item 15 of the 2020 FDD, the Hunters formed KAM, on September 10, 2010, entered into an Area Representative Agreement with Defendant for the territory in and around Columbia, South Carolina (the "Columbia Agreement").[2]

## KAM'S DEVELOPMENT OF THE COLUMBIA TERRITORY
## AND DEFENDANT'S WRONGFUL AND BAD FAITH CONDUCT

32.    After entering into the Columbia Agreement, KAM began to develop Marco's franchises within the territory.

33.    In or around September 2011, Defendant entered into an Area Development Agreement with Joe Walker and Harold Tuma ("JHD"), the territory of which is completely within the defined territory of the Columbia Agreement.

34.    As of January 1, 2016, despite JHD being two (2) stores behind in its own development schedule, KAM was exceeding its own development schedule.

35.    At the 2016 Annual Convention held in San Antonio, Texas, Defendants agreed to give JHD a limited Right of First Refusal ("ROFR") to execute new locations in JHD's development area or they would lose the territory.

36.    However, Defendants failed to honor the agreement regarding the ROFR when KAM presented an approved location in Easley to JHD. JHD declined to develop the site, and Marco's refused to allow KAM to develop it.

37.    On or around May 25, 2018 (eight years into the ten-year term of KAM's Columbia Agreement), Defendant and JHD revised JHD's ADA, reducing the number of required stores from 22 to 17, with no input or agreement by KAM.

---

[2] KAM also entered into a second Area Representative Agreement for the territory in and around Charlotte, North Carolina dated December 7, 2011 (the "Charlotte Agreement"). That agreement is not at issue in this dispute.

38. As a result, certain areas of Upstate South Carolina were relinquished, allowing KAM to develop three (3) additional stores.

39. Orangeburg County, which can hold one (1) store, was also relinquished.

40. However, no other relinquished counties could hold a store.

41. As a result, KAM was only able to develop four (4) additional stores, despite Marco's holding KAM to a development standard of five (5).

42. On or around July 2, 2018, KAM sent Defendant a written request to revise the Columbia Agreement's development schedule, to which Defendant agreed to do in writing on or around July 30, 2018.

43. However, on or around August 15, 2018, Defendant sent KAM a signed amendment to the Columbia Agreement that did not include the agreed upon development schedule, as well as including additional material changes to the Columbia Agreement to which KAM never agreed.

44. KAM requested the material changes beyond the development schedule modifications be removed, but Defendant refused.

45. JHD's revised ADA expired on December 31, 2019, and JHD fell one (1) store short of their revised obligation.

46. With less than a year left in the Columbia Agreement, and purely as a result of Defendant's revision to JHD's obligation, coupled with JHD failing to meet even the revised obligation, there is now a two (2) store difference between JHD's commitment to the Columbia area and KAM's commitment per the Columbia Agreement.

47. This is even after Marco's extended JHD's term for the Columbia territory by two years, instead of terminating the JHD ADA when JHD was in default for not meeting the development schedule.

48.     Despite this fact, by the end of 2019, KAM had 28 stores opened under the Columbia Agreement.

49.     On or around December 20, 2019, Marco's sent KAM a congratulatory letter for exceeding its development obligations in 2019. The letter also stated that KAM was to connect with Ron Stilwell, Defendant's Chief Development Officer, on a plan for 2020 development.

50.     KAM followed through with Mr. Stilwell, who had KAM start with the market optimization process for renewal of the Columbia Agreement. Mr. Stilwell and KAM agreed to a map with the remaining locations to be developed, and Mr. Stilwell approved the development schedule for the renewal term to be two (2) stores in 2021, two (2) in 2022, two (2) in 2023, one (1) in 2024, and one (1) in 2025.

51.     On or around May 14, 2020 KAM provided written notice to Defendant of KAM's intention to renew the Columbia Agreement.

52.     Mr. Stilwell advised KAM that it was in the queue to receive the renewal paperwork and to "be patient."

53.     KAM followed up with Mr. Stilwell several times on the status of the renewal paperwork. Mr. Stilwell advised that it is being handled by the legal department and that Ashley Weis would connect with KAM.

54.     On July 23, 2020, KAM followed up with Ms. Weis but received no response.

55.     Rather than receiving the renewal paperwork, KAM received a Notice of Deficiency Notice on July 24, 2020 (the "Deficiency Notice") – less than sixty (60) days prior to the renewal deadline of the Columbia Agreement.

56.     KAM responded to the Deficiency Notice in short order, agreeing to resolve any of the alleged deficiencies which were resolvable and again requested that the renewal agreement be sent.

57.     KAM followed up with Ms. Weis again on August 6 and 10, 2020.

58.     On August 11, 2020, Ms. Weis finally responded and stated that the renewal status of the Columbia Agreement had not yet been determined.

59.     Instead of receiving the renewal paperwork or any clarification, KAM received the Notice of Default (the "NOD") on August 13, 2020.

60.     The NOD stated that KAM was in default of the Columbia Agreement for failure to meet its development schedule of opening thirty-five (35) stores by September 10, 2020, failure to meet its reporting requirements, and violations of Sections 5.2, 5.16, 14.1, and 14.1.4 of the Columbia Agreement as the result of the Hunters having business interests outside of the Marco's system.

61.     Despite Defendant's claim to the contrary, KAM is in complete compliance with the development schedule of the Columbia Agreement.

62.     Prior to the NOD, KAM has never been issued a notice of default or deficiency regarding the development schedule.

63.     As stated above, KAM ended 2019 with 28 stores opened.

64.     As of the date hereof, KAM has opened two (2) stores in the Columbia territory in 2020, bringing the total to thirty (30) stores.

65.     Pursuant to Section 5.3.2(b) of the Columbia Agreement, a store is counted towards the development schedule "when the Store is not yet open, but the franchisee for that Store has paid the Franchisor the entire initial franchise fee due under the franchise agreement for that Store...."

66.     Three (3) franchise agreements for the Greenville area, one (1) franchise agreement for Blythewood and one (1) franchise agreement for Candler are all presently fully-funded. This brings the total to thirty-five (35) stores.

67.    Pursuant to Section 5.3.2(c) of the Columbia Agreement, a store is counted towards the development schedule "when Franchisor and an area developer have entered into a development agreement for the corresponding number of Stores, and Franchisor has received a non-refundable development fee in an amount of at least Five Thousand Dollars ($5,000) per Store to be developed under that development agreement...."

68.    The non-refundable development fee has been paid for the Waynesville location.

69.    As a result, KAM has 36 stores pursuant to the terms of the Columbia Agreement and has not only met, but exceeded, its obligations.

70.    The NOD next claims that KAM is in default of Section 5.3.1 of the Columbia Agreement, which states:

> Area Representative shall provide to Franchisor a report at least once each calendar month, by the 15th day of the month, providing such detail and information as Franchisor may reasonably request concerning Area Representative's compliance with the Development Schedule. Such report shall be in the form and manner reasonable required by Franchisor and may include electronic record keeping on the Franchisor's web site used for such purpose.

71.    As Marco's is aware, Mike Hunter has bi-weekly calls with KAM's project coordinator, Amanda Sanchez, in which current and future projects are discussed and several of Defendant's employees are also on these bi-weekly calls, including, but not limited to, Andrew Altman, Joe Stephens, and Milton Molina. This process has been in place for years.

72.    Additionally, Mike Hunter speaks and/or communicates through text message and email with Joe Stephens, KAM's Development Liaison at Marco's, multiple time a week.

73.    KAM also updates the store task list on Ciao Net on regular basis.

74.    This does not include regular ad hoc communications with various employees of Defendant.

10

75.     Defendant's President & Chief Operating Officer, Anthony Libardi, personally advised the Hunters on a recent phone call that this claimed default was a non-issue.

76.     Accordingly, KAM is in complete compliance with Section 5.3.1.

77.     KAM is not in Violation of Sections 5.2, 5.16, 14.1, and 14.1.4 of the Columbia Agreement.

78.     The NOD also claims that KAM is in violation of Sections 5.2, 5.16, 14.1, and 14.1.4 of the Columbia Agreement, because "[a]s the principals of KAM, [Mike and Andy] Hunter[ ] serve as the Operating Partners under the Columbia Agreement; and that Agreement specifically requires that the Hunters confine their business activities to management of the KAM Marco's Pizza® business and devote their full-time attention, energy, and efforts to fulfilling the duties of the Area Representative."

79.     These claims are untrue and an improper attempt to put restrictions on the Hunters that do not exist under the terms of the Agreement.

80.     Defendant claims that KAM is in violation of Section 5.2 of the Agreement, which states that:

> Area Representative's business shall be under the active full-time management (as more fully set forth in section 5.16) of Area Representative. If Area Representative is a corporation, partnership, limited liability company, or limited liability partnership, such management must be by one of Area Representative's principals who is designated to supervise the operation of the business contemplated under this Agreement and who has been previously approved by Franchisor (the "Operating Partner").

81.     As the NOD itself states, "[a]s the principals of KAM, the Hunters serve as the Operating Partners under the Columbia Agreement."

82.     Accordingly, on the face of the Columbia Agreement itself, and as admitted by the NOD, KAM is in full compliance with Section 5.2 of the Agreement.

83.     The NOD claims that KAM is in default of 5.16 of the Agreement, which states, in its entirety:

> Area Representative (or if Area Representative is a corporation or partnership, the Operating Partner) or one of Area Representative's Highly Trained Personnel shall devote his or her full-time efforts, of not less than forty (40) hours per week, to the management and attention of the Area Representative Business. Such full-time efforts shall require, among other things, this individual to:
>
> 5.16.1  Respond to all potential franchise sales leads provided by Franchisor, or Franchisor's lead generation mechanisms.
>
> 5.16.2  5.16.2 Respond to all customer concerns or other problems identified by Franchisor or customers of franchised stores within the Territory.
>
> 5.16.3  Take individual action to exercise Area Representative's Promotion Rights and Obligations by contacting a minimum of forty (40) prospective franchisees within the Territory until the Development Schedule is completed.
>
> 5.16.4  Take such other action within the Territory as Franchisor may reasonably require in connection with the exercise of the Promotion Rights and Obligations.

84.     KAM, including the Hunters, has devoted full-time efforts to the management of KAM, have responded to all potential franchise sales leads, responded to all customer concerns within the defined territory, have taken individual action to exercise its promotion and development obligation or any other requirement of the Columbia Agreement.

85.     The NOD's claim that KAM is in violation of 14.1 of the Columbia Agreement, which states that:

> Area Representative covenants that during the Term of this Agreement, except as otherwise approved in writing by Franchisor, Area Representative (or if Area Representative is a corporation or partnership, the Operating Partner) or Area Representative's Manager shall devote full time, energy, and best efforts to the management and operation of the Area Representative Business.

86.     Defendant is not in possession any evidence that KAM and the Hunters have not fully complied with Sections 5.16 and 14.1 of the Columbia Agreement.

87.     The NOD claims that KAM is in violation of Section 14.1.4 of the Agreement, which states that "Area Representative shall confine its activities to only: (a) conducting the business licensed under this Agreement; and (b) conducting the business licensed under a franchise agreement with Franchisor."

88.     The Summary of Terms of the Columbia Agreement clearly and unambiguously defines "Area Representative" as KAM.

89.     KAM is not engaged in any activities outside of conducting the business licensed under the Columbia Agreement or conducting the business of a franchise agreement between KAM and Marco's.

90.     Upon information and belief, Defendant is claiming that the Hunters' other business interests, to the extent they exist, violates Section 14.1.4.

91.     Section 14.1.4 only restricts the Area Representative, i.e. KAM, from conducting business outside of the Marco's system.

92.     Accordingly, KAM is in full-compliance with Section 14.1.4 of the Columbia Agreement.

93.     KAM is not in material default of any provision of the Columbia Agreement or any other agreement between KAM and Defendant.

94.     KAM is current on all monetary obligations owed to Defendant.

95.     KAM stands ready, willing, and able to comply with Sections 2.2.4 through 2.2.7 of the Columbia Agreement, provided that Defendant does not materially alter the terms of its standard area representative renewal agreement.

96.     The timing of both the NOD and the Deficiency Notice coincide with Defendants questioning of, not only KAM, but other Area Representatives about their alleged involvement

with a franchise system wholly distinct and non-competitive[3] to Defendant with whom former executives of Defendant are involved.

97.    In September 2016, Defendant's CEO, Jack Butorac, sent a letter to the Area Representatives (the "Butorac Letter"), stating that he believes the Area Representatives have cost him over $230 million in lost revenue.

98.    The Butorac Letter claimed there was no plan to eliminate Area Representatives at that time.

99.    Defendant's actions since the date of the Butorac Letter clearly evidence that statement was false.

100.   Upon information and belief, there was a meeting among Defendant's executives discussing a plan to eliminate Area Representatives in the following way: 1) Re-write the Area Representatives agreement in a manner that is less favorable to the Area Representatives; 2) Create an Area Representative manual that would be impossible to adhere to; and 3) Create a litany of kickbacks on all suppliers / vendors to include food, equipment, and technology that would reduce store-level EBITDA.

101.   This would, in turn, result in a short term slow down at store-level growth, and make it more difficult for Area Representatives to meet their development schedules, which would allow Defendant to default and terminate the Area Representatives and recapture the revenue stream, and then ramp up franchise sales once again.

102.   This plan has been put into place, and the effects are have significantly slowed growth in the system over the last few years.

---

[3]See Section 14.2.3 of the Columbia Agreement only prohibits KAM from "maintain[ing], operat[ing], affiliate[ing] with, or hav[ing] an interest in any franchised or company-owned business that offers or sells pizza products and related food items and services as a primary menu item."

103.    In fact, the direct impact of the increased food costs to franchisees alone has significantly impaired franchisees' profitability while the amounts earned by Defendant have significantly increased.

104.    Franchisees could purchase the exact same food product sold by Defendant without the Marco's branded label at a significantly cheaper cost.

105.    Upon information and belief, the NOD and Defendant's refusal to renew the Columbia Agreement is an attempt to wrongfully and improperly recapture the revenue stream from KAM (and presumably the other Area Representatives) in an attempt to increase Defendant's valuation as they fix themselves for a liquidity event as discussed below.

106.    Upon information and belief, Defendant's improper conduct appears to be also motivated by Andy Hunter's involvement in the Area Representatives of Defendant's attempt to form an area representative association.

107.    Andy Hunter served as the president of the Area Rep Leadership Council, an advisory board of Defendants, at a time when the Area Representative community was raising funds for their independent association, MAR Association, and preparing to go to arbitration over certain drastic changes made to the Area Representative agreement, and which were objectionable to the Area Representative community at large.

108.    These efforts were ultimately thwarted by Defendant, which in and of itself violates the Federal Trade Commission's direct prohibition of such interference with associations.

109.    Upon information and belief, Todd Watson, VP / General Counsel of Defendant, specifically mentioned Andy Hunter by name in an employee survey in an extremely unprofessional manner.

110.   Defendant is also treating KAM far differently than other Area Representatives.

111.   Defendant has historically renewed the agreements of other Area Representatives that were significantly farther behind in their development schedule than Marco's unfounded claim against KAM, sometimes as much as 15 to 20 stores.

112.   Even if KAM had substantially complied with its obligations and was just a few stores behind in their development schedule, which, as discussed at length above, is simply not true, Marco's demonstrative willingness to renew agreements of Area Representatives who were substantially behind clearly demonstrates Marco's ulterior motives and bad faith towards KAM.

113.   Defendant was quick to acknowledge the unprecedented impact of the COVID-19 pandemic as it applied to itself and its employees by halting all travel of its employees and converting all in-person meetings to virtual.

114.   However, when it comes to KAM and other Area Representatives, Defendant has expected KAM and other Area Representatives to continuing servicing stores as normal.

115.   Despite the uncertainty surrounding restaurants as a result of the pandemic, including some lenders completely suspending all restaurant lending and the moratoriums on the issuing permits and evictions of existing tenants in desirable store locations, Defendant has made no concessions regarding KAM's development schedules.

116.   Even in the face of this adversity and lack of any empathy from Defendant, despite the increased difficulties, as stated above, KAM has actually opened stores during the pandemic.

## COUNT I – DECLARATORY JUDGMENT

117.   KAM repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length.

118. The Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., grants the Court, in cases of actual controversy such as this one, the power to issue judgments declaring the rights and other legal relations of any interested party, whether or not further relief is or could be sought.

119. Certain disputes have arisen between the KAM and Defendant, arising out of and relating the Columbia Agreement.

120. These disputes include:

    a.   Whether KAM is in full-compliance with the Sections of the Columbia Agreement raised by Defendant in the NOD; and

    b.   Whether Defendant has breached Section 2.2 of the Columbia Agreement by refusing to tender a renewal of the Columbia Agreement.

121. Defendant has already refused to tender a renewal of the Columbia Agreement, which expires of its own terms on September 10, 2020.

122. Therefore, an actual controversy has arisen and now exists between KAM, on the one hand, and Defendant, on the other, concerning the rights of KAM under the express terms of the Columbia Agreement.

123. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and for all the reasons set forth above, KAM accordingly desires a judicial determination declaring that:

    a.   KAM is in full compliance with its development schedule and Sections 5.2, 5.3.1, 5.16, 14.1, and 14.1.4 of the Columbia Agreement; and

    b.   Defendant is in breach of Section 2.2 of the Columbia Agreement by refusing to tender a renewal of the Columbia Agreement.

124. There is a justiciable controversy between KAM and Defendant as to the issues detailed herein.

17

125.    A judicial declaration is necessary and appropriate at this time under the circumstances so that the parties to this action may ascertain their rights and duties under the Columbia Agreement.

126.    Given the facts and Defendant's actions fully detailed above, the facts have sufficiently crystallized to permit an intelligent and useful decision to be made, and the issues are fit for a judicial determination.

### Count II – Breach of Contract

127.    KAM repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length.

128.    Section 2.2 of the Columbia Agreement states:

> Area Representative may, at its option, renew this Agreement for four (4) additional terms of five (5) years each. Renewal shall be automatic subject only to the following conditions, all of which must be met before renewal:

> 2.2.1 Area Representative shall give Franchisor written notice of Franchisee's election to renew no fewer than three (3) months nor more than twelve (12) months before the end of the initial term (Franchisor will provide Franchisee notice of the pending expiration to allow Franchisee time to timely notify Franchisor of its desire to renew.);

> 2.2.2 Area Representative shall not be in material default of any provision of this Agreement, any amendment to this Agreement, any successor to this Agreement, or any other agreement between Area Representative and Franchisor or Its subsidiaries and affiliates. If Area Representative is currently in default but is able to cure, and so cures during the time periods provided herein, then the renewal shall not be otherwise precluded;

> 2.2.3 Area Representative must be "current" on all monetary obligations owed by Area Representative to Franchisor and Franchisor's subsidiaries and affiliates;

> 2.2.4 Area Representative shall execute Franchisor's then-current form of area representative agreement. Franchisor hereby covenants that the economic terms of this Agreement, as provided in Section 4 of this Agreement and any amendments thereto shall continue in full force and effect throughout the Term of this Agreement and all renewals thereto and shall be incorporated as part of any updated

area representative agreement which Area Representative is required to execute hereunder. Area Representative agrees to be bound by the revised and/or updated policies, procedures and operational protocol in Franchisor's then-current form of area representative agreement, provided however, that Franchisor hereby agrees that no term adopted in the then-current area representative agreement shall give rise to an immediate event of default if Area Representative was in compliance with the previous Area Representative Agreement. Franchisor will grant Area Representative a reasonable amount of time to become compliant with any revised and/or updated policies, procedures and operational protocol in the then-current area representative agreement.

2.2.5 Area Representative shall pay the Renewal Fee (defined below);

2.2.6 Area Representative and its principals shall execute a general release, in a form prescribed by Franchisor, of any and all claims against Franchisor and its subsidiaries and affiliates, and their respective officers, directors, agents, and employees; and

2.2.7 Area Representative and its personnel shall comply with Franchisor's then-current training requirements.

129. On May 14, 2020 KAM provided timely written notice to Defendant of KAM's intention to renew the Columbia Agreement.

130. As stated fully-above, KAM is not in material default of any provision of the Columbia Agreement and/or has cured any alleged deficiencies.

131. KAM is current on all monetary obligations owed to Marco's.

132. KAM stands ready, willing, and able to execute Defendant's now-current Area Representative renewal agreement, with the Addendum previously offered by Defendant, pay the renewal fee, execute a general release and comply with Defendant's now-current training requirements.

133. Defendant is refusing to tender the renewal agreement.

134. Defendant is acting in a malicious or arbitrary manner and there is not a reasonable business justification for the refusal.

135.    Defendant is treating KAM differently than other Area Representatives, the agreements of which Defendant renewed.

136.    KAM has, and will continue to suffer irreparable harm and damages as a result of Defendant's refusal to tender a renewal of the Columbia Agreement.

### Count III – Violations of ORC 1334.03(B)

137.    KAM repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length.

138.    In Defendant's 2010 FDD, provided to the Hunters before KAM entered into the Columbia Agreement, Defendant made representations that the "Area Representative Agreement does not require you (or the majority owner of your Area Representative Business) to become a Highly Trained Personnel or otherwise participate personally in the direct operation of the Representative Business....."

139.    It also includes that the Area Representative may "hire sufficient employees to perform the Sales and Franchise Support functions..."

140.    In the NOD, Defendant is now taking the position that the Hunters' business interests outside the Defendant's system are a breach of the Columbia Agreement, despite Defendant's full knowledge of the Hunters having other business interests at the time Defendant first solicited them and the Item 15 of the FDD clearly anticipated that the Hunters were not precluded from having business interests outside of Defendant's system and. while it may have encouraged certain operational participation, it was not mandated.

141.    Defendant further induced the Hunters and KAM to enter into the Columbia Agreement by stating that, with the renewal terms guaranteed in the agreement, the relationship would last for thirty (30) years and create "generational wealth."

142.    Defendant has falsely manufactured defaults against KAM.

143.    Defendant is now refusing to tender a renewal of the Columbia Agreement in breach of the agreement's express terms.

144.    As a result of Defendant's actions described fully above, Defendant has made false or misleading statements and engaged in deceptive and unconscionable acts or practices and has, and will continue, to cause irreparable harm and damages to KAM.

### COUNT IV – ATTORNEYS' FEES

145.    KAM repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though fully set forth at length.

146.    ORC 1334.09(B)(2) states that the "court may award to the prevailing party a reasonable attorney fee limited to the work reasonably performed, if ... [t]he seller or broker committed an act or practice that violates sections 1334.01 to 1334.15 of the Revised Code."

147.    For the reasons stated above, Defendant has violated ORC 1334.03(B).

148.    KAM is entitled to recover its reasonable attorneys' fees incurred in this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff KAM Development, LLC respectfully prays for the following relief against Defendant Marco's Franchising, LLC:

A. For a judicial declaration that:

I.    KAM is in full compliance with its development schedule and Sections 5.2, 5.3.1, 5.16, 14.1, and 14.1.4 of the Columbia Agreement; and

II.    Defendant is in breach of Section 2.2 of the Columbia Agreement by refusing to tender a renewal of the Columbia Agreement;

B.    An injunction preventing Defendant from refusing to tender a renewal of the Columbia Agreement

21

C.      KAM's damages at an amount to be proven at trial, exceeding $75,000;

D.      Attorney's fees;

E.      Costs; and

F.      Any other relief this Court deems equitable and just.

                                    Respectfully submitted,

Dated: September 9, 2020            */s/ Peter R. Silverman*
                                    Peter R. Silverman (0001579)
                                    Matthew T. Kemp (0093136)
                                    Nicholas A. Huckaby (0097182)
                                    SHUMAKER, LOOP & KENDRICK, LLP
                                    1000 Jackson Street
                                    Toledo, Ohio 43604
                                    Telephone:    (419) 321-1206
                                    Fax:          (419) 241-6894
                                    E-Mail:       psilverman@shumaker.com
                                                  mkemp@shumaker.com
                                                  nhuckaby@shumaker.com

                                    Justin M. Klein
                                    Brent Davis
                                    *(Pro hac vice applications forthcoming)*
                                    MARKS & KLEIN, LLP
                                    63 Riverside Avenue
                                    Red Bank NJ 07701
                                    Telephone:    (732) 747-7100
                                    Fax:          (732) 219-0625
                                    E-Mail:       justin@marksklein.com
                                                  brent@marksklein.com

                                    *Attorneys for Plaintiff*
                                    *KAM Development, LLC*