UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KAM Development, LLC,

                Plaintiff,

v.

Marco's Franchising, LLC,

                Defendant.

Case No. 3:20-cv-2024

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Plaintiff KAM Development, LLC is seeking a preliminary injunction to prevent Defendant Marco's Franchising, LLC from ending two separate Area Representative Agreements (ARAs) between the parties. KAM first sought a preliminary injunction with temporary restraints to prevent Marco's from ending an ARA governing the Columbia, South Carolina area (the Columbia ARA). (Doc. No. 5). I issued a temporary restraining order and set the matter for a hearing. (Doc. No. 10). KAM then filed a second motion for a preliminary injunction with temporary restraints, this time seeking to prevent Marco's from terminating an ARA governing the Charlotte, North Carolina area. (Doc. No. 18). Marco's filed responses to these motions for injunctive relief, (Doc. Nos. 20 & 25), and KAM replied. (Doc. Nos. 24 & 26 (sealed) & 27). Over three days from October 2, 2020 to

October 8, 2020, I conducted a hearing to take evidence[1] and hear argument on these matters. Following the hearing, Marco's, (Doc. Nos. 33 & 36), and KAM, (Doc. No. 34 (sealed)), filed closing arguments in support of their positions.

After careful consideration of the parties' arguments and the evidence elicited, and for the reasons that follow, I deny KAM's motions for preliminary injunctive relief.

## II.  BACKGROUND

The present dispute centers on two Area Representative Agreements entered into between KAM and Marco's nearly a decade ago. Under these ARAs, KAM was responsible for soliciting potential franchisees for Marco's and servicing existing Marco's franchisees within a defined geographic area. In turn, KAM would receive a commission for each initial franchise fee paid to Marco's by its franchisees as well as some portion of royalties paid to Marco's by those franchisees.

The parties entered into the first ARA, which governed the Columbia, SC territory, on September 10, 2010. The agreement's initial term was set to expire after ten years, on September 10, 2020, but the agreement also provided for up to four additional terms of five years each, as long as certain conditions were met as of the time for renewal. The second ARA governed the Charlotte, NC area and was entered into on December 7, 2011. Like the Columbia ARA, the Charlotte ARA provided for an initial term of ten years along with up to four additional terms of five years each.

On May 14, 2020, KAM sent Marco's written notice of its intention to renew the Columbia ARA. On July 24, 2020, Marco's sent KAM a Notice of Deficiency, in which Marco's stated it was providing KAM the opportunity to resolve several material defaults regarding the operation of its territories under both agreements.[2] This Notice of Deficiency also informed KAM it was currently

---

[1] In my use of the word "evidence," I'll refrain from emphasis by way of italics, boldface, or both, as Marco's counsel seems to have exhausted expression in that regard.
[2] The Notice of Deficiency separated the defaults into three categories: (1) Recommendation of unapproved technology vendors; (2) P&L Reviews; and (3) OSE Visits and Unauthorized AR-OFC.

ineligible for renewal of the Charlotte ARA and provided steps for KAM to take to cure each of the three grounds for default it contained. KAM claims it took steps to cure each of these defaults and informed Marco's it had done so. KAM again sought to complete the steps necessary to renew the Columbia ARA, but Marco's did not provide the renewal materials. On August 13, 2020, Marco's sent KAM a Notice of Default regarding the Columbia ARA. The Notice of Default contained three categories of defaults that were not mentioned in the earlier Notice of Deficiency.[3] On September 2, 2020, KAM, through counsel, sent a letter disputing the allegations of default contained in the Notice of Default and demanding that Marco's provide the contract to renew the Columbia ARA. After Marco's failed to do so, KAM filed the present suit on September 9, 2020.

KAM initially sought preliminary relief as to only the Columbia ARA, and I issued a temporary restraining order on September 11, 2020. (Doc. No. 10). But on September 15, 2020, Marco's sent KAM a Notice of Default regarding the Charlotte ARA.[4] KAM responded with a second motion for a preliminary injunction, this time seeking to enjoin Marco's from terminating the Charlotte ARA. (Doc. No. 18). A hearing was scheduled for October 2, 2020, to address the two motions for preliminary relief, but in the days leading up to the hearing, the scope of the parties dispute continued to grow.

On September 30, 2020 and October 1, 2020, Marco's conducted three inspections of stores owned and operated by entities related to KAM, resulting in the temporary closure of one of these stores.[5] (Doc. No. 27-1). KAM claims these unannounced inspections were an attempt by Marco's to intimidate and harass KAM. Marco's claims they were done in the ordinary course of business.

---

[3] They were: (1) Failure to Meet Development Obligations under the Columbia Agreement; (2) Development Status Communication; and (3) Full-Time Best Efforts to Conducting the Marco's Area Representative Business.

[4] The Charlotte Notice of Default largely mirrored the allegations in the Columbia Notice of Default, but this time Marco's alleged KAM had failed to meet its obligations under the Charlotte ARA.

[5] The stores at issue are owned and operated by entities related to KAM.

Although Marco's alleges these inspections revealed further evidence that KAM was in default of its obligations under both ARAs, I make no finding at this time concerning the conditions at the stores that were inspected nor the impact, if any, those alleged conditions have on the propriety of granting injunctive relief.

### III.   DISCUSSION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To make such a showing, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017); *but see Winter*, 555 U.S. at 22-24 (treating these factors as quasi-elements) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.") (emphasis in original).

1. **Likelihood of Success on the Merits**

For the first factor to point in its favor, KAM must show it has a strong likelihood of success on the merits.  With regard to KAM's first two claims, this means KAM must show it will

likely be able to prove it did not default on either the Columbia or Charlotte ARAs.[6] While the agreements are distinct, one of the conditions for renewal contained in the Columbia ARA states "Area Representative shall not be in material default of any provision of this Agreement … or any other agreement between Area Representative and Franchisor .…" (Doc. No. 5-1 at 279). Therefore, if KAM was in default on the Charlotte ARA, it would not be entitled to renewal of the Columbia ARA. For this reason, both of KAM's motions for a preliminary injunction turn in part on whether KAM can show it has a strong likelihood of successfully proving it was not in default of the Charlotte ARA.

The Charlotte Notice of Default claims KAM defaulted on certain obligations it has pursuant to a 2019 agreement the parties reached as part of a cure for KAM's previous default of the development schedule contained in the Charlotte ARA itself. (P. Ex. 11). But in testimony during the hearing on October 2, 2020 and October 5, 2020, Andy Hunter denied that KAM made that proposal referenced in the Notice of Default and claimed that KAM was bound only by the development schedule contained in the Charlotte ARA.

Following this testimony, Marco's took the position that if, as Andy Hunter testified, there was never any amendment to the agreement in 2019, then KAM is in default of its obligation to have 29 stores open in the Charlotte area by the third quarter of 2020. (Doc. No. 33 at 7-9). KAM claims the analysis must be confined to the default that Marco's claimed in the September 15, 2020

---

[6] KAM's first claim seeks a declaratory judgment holding that KAM is in compliance with the Columbia and Charlotte ARAs, and that Marco's breached the Columbia ARA by refusing to tender a renewal of it. (Doc. No. 13 at 20). KAM's second claim is a breach of contract claim that turns on many of the same questions as KAM's first claim. Although KAM also includes a third claim for violations of O.R.C. § 1334.03(B), I do not address that claim here for two reasons. First, even if KAM established it was likely to succeed on that claim, the injunctive relief it seeks would be inappropriate given my finding it has not established it will suffer irreparable harm in the absence of an injunction. Second, the parties do not seem to have completely briefed or argued the issue. The claim was not addressed during the hearing on KAM's preliminary injunction motions, and neither party made any mention of it in their closing arguments.

Notice of Default—that is, KAM's anticipated failure to open three new stores in 2020. (Doc. No. 35 at 12). But such an approach is inconsistent with Andy Hunter's testimony that KAM viewed the development schedule attached to the Charlotte ARA as the document governing its obligations to Marco's. For this reason, I will analyze KAM's likelihood of success by looking at whether they would be able to show they did not default on the development schedule contained in the Charlotte ARA itself. On this point, KAM claims that the deadline to have 29 stores opened is actually December 31, 2020.

To show it is not in default of the Charlotte ARA, KAM would first have to show that the development schedule contained in the Charlotte ARA provided annual rather than quarterly targets. Marco's argues that the parol evidence rule prevents KAM from doing so. KAM argues that the course of dealing (or course of conduct) between the parties demonstrates that the targets should be evaluated annually.

The parol evidence rule provides that absent certain exceptions, the parties' final written integration of their agreements may not be varied, contradicted, or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements. *Williams v. Spitzer Autoworld Canton, L.L.C.*, 913 N.E.2d 410, 415 (Ohio 2009). To the extent that KAM attempts to use the parties past actions as evidence that they intended the development schedule to be interpreted annually, the parol evidence rule would defeat that argument.

But "[e]vidence of subsequent agreements or modifications of a contract does not fall within the parol evidence rule." *Paulus v. Beck Energy Corp.*, 94 N.E.3d 73, 85 (Ct. App. Ohio 2017) (further citation omitted). Thus, KAM does not have to overcome the parol evidence rule to argue that the course of conduct between the parties demonstrates that, despite entering into a development schedule in 2011 that provided for quarterly development targets, KAM and Marco's, through their conduct, amended that agreement to provide for a development schedule that is evaluated annually.

6

Instead, KAM faces a different obstacle. The Charlotte ARA contains a provision requiring all changes to the agreement be made in writing. KAM, relying on *RotoSolutions, Inc. v. Crane Plastics Siding, L.LC.*, Nos. 13AP-1, 13AP-52, 2013 WL 5451702, at *3 (Ohio Ct. App. Sept. 30, 2013), contends that an oral modification of a written contract can be enforceable notwithstanding a provision in the contract requiring modifications to be in writing. (Doc. No. 35 at 9, 12). But KAM has not identified the oral modification. In its closing argument, KAM appears to rely on an argument that it can still meet the three-store requirement referenced in the September 15, 2020 Notice of Default, but that requirement represents a concession Marco's made based on its belief in the existence of an agreement repudiated by Andy Hunter's testimony.

KAM has not presented evidence from which I can conclude, at this time, that it has a strong likelihood of establishing it is not in default of the Charlotte ARA. The evidence suggests KAM had an obligation to develop 29 stores by the end of the third quarter of 2020. KAM has not. Because the Columbia ARA's renewal provision requires KAM to show that it is not in material default of any agreements between KAM and Marco's, I cannot conclude that KAM has a strong likelihood of success on its claim for breach of that agreement either.

2. **Irreparable Harm**

"The second factor asks whether the movant 'is likely to suffer irreparable harm in the absence of preliminary relief[.]'" *Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017) (quoting *Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014)); *Winter*, 555 U.S. at 22. An injury is irreparable if it is not fully compensable by monetary damages. *Id.*

In my previous order granting KAM's motion for a temporary restraining order, I found, based on KAM's allegations, that KAM faced irreparable harm in the form of a loss of customer

goodwill. (Doc. No. 10). But after further development of the record, I can no longer find this a sufficient basis to conclude that KAM is likely to suffer irreparable injury.

Goodwill is an intangible asset that represents the value a business drives from its reputation. The Supreme Court has referred to goodwill as "the expectancy of continued patronage." *Newark Morning Ledger Co. v. U.S.*, 507 U.S. 546, 556 (1993) (quoting *Boe v.* Commissioner, 307 F.2d 339, 343 (9th Cir. 1962)). KAM argues the loss of goodwill it has derived from franchisees it has serviced would constitute irreparable harm because it is a loss that would be difficult to compute. (Doc. No. 35 at 8). But this particular harm can be offset by the forward progress of this lawsuit even if KAM is denied injunctive relief. That is, if KAM's concern is that KAM no longer serving as the area representative will lead franchisees to believe that KAM must have done something wrong, then the present litigation will serve as a vehicle for KAM to alleviate this harm.

Should KAM prevail in this litigation, KAM can inform the franchisees of their success and the harm to their reputation will be undone. And KAM has not put forth any evidence that it would suffer losses during the period of time some franchisees may be unaware of the reason KAM stopped servicing them.

KAM, relying on *Performance Unlimited, Inc. v. Questar Publishers,* 52 F.3d 1373, 1382 (6th Cir. 1995), also argues "[t]he impending loss or financial ruin of [a] business constitutes irreparable injury," and that KAM will be completely destroyed if an injunction is not granted. (Doc. No. 35 at 7). But the record developed thus far shows this is not the case. There is currently no reason to believe that KAM cannot take the capital and experience it has accumulated over the years serving as an area representative and enter into an area representative agreement with another franchisor. It is noteworthy here that KAM's two principals, Mike Hunter and Andy Hunter, are already principals of another entity that serves as an area representative for a different franchise concept. If KAM wins its suit against Marco's, it can recover money damages to compensate it for the value of the

area representative agreements it had with Marco's, and use that capital to invest in other business opportunities.

### 3. Balance of Equities

When considering the third factor, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). In my order granting KAM's motion for a temporary restraining order, I concluded this factor pointed in KAM's favor because I found holding Marco's to remain a party to the contract for what could be at most another twenty-eight days posed no risk of substantial harm to Marco's. But the situation is different now. A preliminary injunction would force Marco's to keep KAM as its area representative for far longer. On this point, I find relevant Marco's arguments regarding whether this is a personal services contract.[7]

While I did not conclude that injunctive relief is beyond this Court's power, I believe there are reasons to be cautious when it comes to forcing parties whose relationship has soured to continue contracting with one another. *See Cedar Fair, L.P. v. Falfas*, 19 N.E.3d 893, 897-98 (Ohio 2014) (explaining that in the absence of specific statutory authority, courts will not issue specific performance for breach of employment agreements because such relief would involve difficult problems of supervision and continuance of a distasteful personal relationship); *see also Goldfarb v.*

---

[7] Marco's argued that the ARAs are personal services contracts and that Ohio law prohibits granting an injunction for specific performance of a personal services contract. In fact, Marco's filed a recent decision by the Court of Common Pleas of Lucas County, Ohio, in which the court denied a preliminary injunction in part because it found that a presumably similar area representative agreement between Marco's and one of its area representatives appeared to be a personal services contract. (*see* Doc. No. 37-1 at 8-16). But Ohio law interpreting the phrase "personal services contract" is sparse, *Smith v. Ohio State Univ. Hosp.*, 674 N.E.2d 721, 723-24 (Ohio Ct. App. 1996), and the determination seems to involve questions of fact better answered by a more thorough discovery process. (*see* Doc. No. 37-1 at 15). Given the nature of the question, and the fact that I have already found an injunction is inappropriate on other grounds, I find it best to abstain from deciding whether the ARAs at issue in this case are personal services contracts.

9

*The Robb Report*, 655 N.E. 2d 211, 219 (Ohio Ct. App. 1995) (holding specific performance of a franchise agreement is unavailable under Ohio law because there is no mutuality in the equitable remedy and court would lack authority to supervise ongoing performance of contract). These problems exist regardless of whether KAM exercises discretion under the ARA. Even if, as KAM suggests, KAM does not exercise any discretion under the ARAs, Marco's is still forced to retain an area representative to carry out all of its "specified policies, practices, and procedures," (*see* Doc. No. 26 at 8), for at least as long as it takes this litigation to conclude.

### 4. Public Interest

The parties have not devoted significant efforts to argument regarding the fourth factor. As I did in my order granting KAM's motion for a temporary restraining order, I conclude that the public interest factor does not weigh heavily in either direction at this time.

### 5. Final Analysis

Weighing the above factors together, I conclude KAM is not entitled to a preliminary injunction on either the Columbia ARA or the Charlotte ARA. KAM has not shown it is likely to succeed on the merits. Should KAM ultimately prove its case, money damages will serve as an adequate remedy for the harm that KAM suffers from wrongfully being deprived of the revenues it receives under the agreements.

### IV. CONCLUSION

Plaintiff's motions for a preliminary injunction, (Doc. Nos. 5 & 18), are denied. Defendant shall file an answer or otherwise respond to Plaintiff's amended complaint by November 4, 2020.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
